**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **JAMES E. STEEN, ET AL** | **CIVIL DOCKET NO. 6:26-cv-01180** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **MIZKAN AMERICA, INC.** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING

Before the Court are cross-motions for summary judgment (the "Motions"): (i) a MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc. 14] filed by Defendant Mizkan America, Inc. ("Mizkan"); and (ii) a MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc. 20] filed by Plaintiffs James E. Steen and Charley S. Steen, III (collectively, "Plaintiffs" or "Steens"). Both Motions are opposed. [Docs. 20, 25]. For the reasons that follow, Mizkan's Motion is GRANTED IN PART and DENIED IN PART and Plaintiffs' Motion is DENIED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from an alleged breach of contract between the Steens, the owners and lessors of the property at issue, and Mizkan, the lessee and successor in interest to the original lessee, Creole Fermentation Industries, Inc. ("Creole"). The dispute concerns the parties' respective rights and obligations under a 2014 Lease Agreement, particularly the condition in which Mizkan was required to surrender the leased property upon termination of the lease.

On or about June 1, 1984, the Steens' predecessors in title and Creole executed a Surface Lease (the "1984 Lease") covering approximately four acres of land now

known as 7331 Ben Frederick Road, Abbeville, Vermillion Parish, Louisiana (the "Property"). [Doc. 20-1, p. 4]. When Creole first took possession of the Property in June 1984, the Property consisted of agricultural farmland. [Doc. 14-1, p. 13].

The 1984 Lease authorized Creole to use the Property for industrial purposes and to construct buildings, wells, roads, and other improvements. [Doc. 20-1, p. 5].

During its occupancy beginning in 1984, Creole constructed buildings, concrete pads, driveways, fencing, and other improvements on the Property and used the Property as an industrial vinegar manufacturing facility. [Doc. 20-1, p. 5].

On August 21, 2014, the Steens, together with eleven other lessors, and Creole executed a new Lease Agreement (the "2014 Lease"), effective July 1, 2014. [Doc. 20-1, p. 5].[1] The 2014 Lease addressed and revoked the parties' prior lease agreements. Section 1(A) of the 2014 Lease expressly provides that "[t]he parties hereby expressly revoke any and all prior leases, if any affected the Lease Premises." [Doc. 14-3, p. 1]. Section 1(B) further addresses the ownership and removal of property and improvements existing before the commencement of the new lease. Specifically, it provides that: ". . . all buildings, fixtures, equipment and other property placed on the Leased Premises prior to the term of this Lease are owned by Lessee, and may be removed at any time during any term of this Lease or for a period of three (3) months at the termination of this Lease." [Doc. 14-3, p. 1].

[1] The industrial buildings and related improvements were present on the Property before July 1, 2014, and remained on the Property after the termination of the subsequent lease.

The 2014 Lease also contains separate provisions addressing the condition in which the Property must be surrendered and the lessee's rights concerning improvements made to the Property. Section 13 of the 2014 Lease provides:

> Lessee agrees to surrender the Leased Premises at the termination of this Lease in substantially as good condition as when received (i.e., suitable for use as sugar cane agricultural farmland), except for damage by Lessors or Lessors' employees or agents, and ordinary wear and tear, damage by fire, storm, lighting, hurricane, tornado, flooding, other casualties and the elements, war, terrorism, act of violence, and natural decay or deterioration. [Doc. 14-3, p. 6].

Section 14.1 of the 2014 Lease provides:

> Lessee may make alterations, additions and improvements to the Leased Premises from time to time during the term of this Lease without any requirement to obtain prior written or oral consent from the Lessors, provided that such alterations, additions, and/or improvements are made solely for purpose of the manufacturing, storage, bottling, and shipping of vinegar and other food products. **Such alterations, additions, or improvements may remain with the Leased Premises at the sole discretion of the Lessee.** Lessee shall have the option at the termination of this Lease, provided Lessee is not in default, to remove any alterations, additions and improvements, provided Lessee delivers up the entire Leased Premises to Lessors in good condition, reasonable wear and tear excepted, Lessee agreeing to repair or pay for all repairs necessary for damages to the Leased Premises occasioned by such removal. [Doc. 14-3, p. 6] (emphasis added).

Section 21 of the 2014 Lease provides that the agreement is governed by and construed in accordance with Louisiana law. [Doc. 14-3, p. 8].

Following execution of the 2014 Lease, Creole underwent a corporate merger. Effective November 1, 2015, Mizkan merged with Creole, with Creole designated as the non-surviving entity. As a result of the merger, Mizkan became the successor-in-interest to Creole. The Steens have acknowledged Mizkan's status as Creole's

successor-in-interest. In their state court Petition, the Steens allege that Mizkan is "the successor-in-interest to Creole [Fermentation] by merger effective November 1, 2015, and therefore liable for all obligations of Creole [Fermentation] under the leases." [Doc. 14-1, p. 11]. Accordingly, Mizkan assumed Creole's contractual rights and obligations under the 2014 Lease by operation of the merger.

Pursuant to Section 25 of the 2014 Lease, Mizkan provided written notice to the lessors on January 19, 2022, of its intent to cancel the 2014 Lease, with cancellation effective January 31, 2023. [Doc. 14-1, p. 12]. At the time of the cancellation, Mizkan was not in default of its obligations under the 2014 Lease. [Doc. 14-1, p. 13]. Upon termination of the 2014 Lease, Mizkan left the industrial buildings and other lessee-owned structures on the Property. [Doc. 20-1, p. 7].

On March 10, 2026, the Steens filed suit in the Fifteenth Judicial District Court for the Parish of Vermilion, State of Louisiana, styled *James E. Steen and Charley S. Steen, III v. Creole Fermentation Industries, Inc. and Mizkan America, Inc.*, Docket No. C-117039, Division I (the "State Court Proceeding"). [Doc. 14-1, p. 13]. Creole Fermentation has since been dismissed as a defendant. [Doc. 14-1, p. 13]. In their Petition, the Steens seek damages, including restoration costs, arising from Mizkan's alleged failure to restore the Property to the condition required under the parties' lease agreements. [Doc. 14-1, p. 13].

On August 7, 2026, Mizkan filed their Motion asking the Court to declare that:

> (a) its surrender obligations under the 2014 Lease Agreement do not encompass property that is not contemplated within the definition of "Leased Premises"; and (b) the Steens have no right to enforce surrender obligations with respect to the Leased Premises that are not expressly

> set forth in the 2014 Lease Agreement given the revocation of prior leases expressly contained in the 2014 Lease Agreement. [Doc. 14-1, p. 19].

The Steens opposed Mizkan's Motion and, on September 11, 2026, filed their own Motion for Partial Summary Judgment. [Doc. 20]. The Steens seek a determination that Section 13 of the 2014 Lease requires Mizkan to return the Property "in substantially as good a condition as when received (i.e., suitable for use as sugar cane agricultural farmland . . .)." [Doc. 20-1, p. 17].

The Defendant's Motion and Plaintiffs' Motion are now ripe for ruling.

## <u>Summary Judgment Standard</u>

A court should grant a motion for summary judgment when the movant can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart La., L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). But there is no genuine issue for trial – and thus a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Anderson*, 477 U.S. 242.

In reviewing "cross-motions for summary judgment, [the court] examine[s] 'each party's motion independently' and view[s] 'the evidence and inferences in the

light most favorable to the nonmoving party.'" *Springboards To Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019), *quoting JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016). "Cross-motions for summary judgment will not, in and of themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). The rationale for this rule is that "each party moving for summary judgment may do so on different legal theories dependent on different constellations of material facts." *Bricklayers, Masons & Plasterers Int'l Union of Am., Loc. Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). Nonetheless, "cross-motions for summary judgment … may be probative of the non-existence of a factual dispute when … they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Petro Harvester Operating Co., L.L.C. v. Keith*, 954 F.3d 686, 700 (5th Cir. 2020) (quoting *Bricklayers*, 512 F.2d at 1023).

## LAW AND DISCUSSION

In its Motion, Mizkan argues that its surrender obligations are limited to those expressly set forth in the 2014 Lease. [Doc. 14-1, p. 19]. Mizkan further contends that the Steens cannot enforce obligations arising under the 1984 Lease because the 2014 Lease expressly revokes all prior leases affecting the Property. [Doc. 14-1, p. 19]. Accordingly, Mizkan seeks a declaration that any obligations arising under a prior lease are without continuing legal effect and that its surrender obligations are

governed exclusively by the terms of the 2014 Lease. Mizkan also requests that the Court declare that its surrender obligations do not encompass property outside the definition of the Leased Premises. [Doc. 14-1, p. 19].

The Steens, in turn, seek partial summary judgment declaring that Mizkan is obligated under Section 13 of the 2014 Lease to surrender the Property ". . . in substantially as good condition as when received . . .," which is further described as ". . . suitable for use as sugar cane agricultural farmland." [Doc. 20-1, p. 17]. The Steens contend that this language expressly requires Mizkan to return the Property in a condition suitable for agricultural use.

Here, the parties incorporated a choice of law provision stating that the contract is to be governed by Louisiana law. [Doc. 14-3, p. 8]. "To determine issues of state law, we look to the final decisions of that state's highest court." *Chaney v. Dreyfus Serv. Corp.,* 595 F.3d 219, 229 (5th Cir. 2010). In Louisiana, the elements of a breach of contract claim are: "(1) defendants owed [plaintiffs] an obligation; (2) defendants failed to perform that obligation; and (3) defendants' failure resulted in damages to the plaintiffs." *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 2014-2592 (La. 12/8/15), 193 So. 3d 1110, 1115 (citing *Favrot v. Favrot*, 2010-0986 (La. App. 4th Cir. 2/9/11), 68 So. 3d 1099, *writ denied*, 2011-0636 (La. 5/6/11), 62 So. 3d 127).

Louisiana Civil Code article 2045 provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." *See also Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 12-2055, p. 5 (La. 3/19/13), 112 So. 3d 187, 192.

The starting point for determining the parties' common intent is the language of the contract itself. *Gulf Eng'g Co., LLC v. Dow Chem. Co*., 334 F. Supp. 3d 804, 807 (M.D. La. 2018) (citing *Angus Chem. Co. v. Glendora Plantation, Inc*., 782 F.3d 175, 180 (5th Cir. 2015)). Article 2046 further provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Thus, when a contract is unambiguous, its interpretation is to be determined from the four corners of the instrument without resorting to examining extrinsic evidence. *Gerretts v. Cap. One, Nat'l Ass'n*, 2026-0105, p. 10 (La. App. 4th Cir. 8/31/26), (citing *Landis Const. Co., L.L.C. v. St. Bernard Parish*, 14-0096, p. 5 (La. App. 4th Cir. 10/22/14), 151 So. 3d 959, 962 (citation omitted)).

However, a contract is ambiguous when after applying established rules of construction its language is reasonably susceptible to more than one interpretation, when there is uncertainty or ambiguity as to its provisions, or when the parties' intent cannot be ascertained from the language of the contract. *Id.*; *Grayson L.L.C. (of Louisiana) v. BPX Operating Co.,* 629 F. Supp. 3d 468, 475 (W.D. La. 2022) (quoting *Tex. E. Transmission Corp. v. Amerada Hess Corp*., 145 F.3d 737, 741 (5th Cir. 1998) (applying Louisiana law)).

Importantly, Louisiana Civil Code article 2050 further provides that each provision in a contract must be interpreted in light of the others provided so that each is given the meaning suggested by the contract as a whole. Accordingly, contractual provisions cannot be considered in isolation when determining the parties' intent.

The Fifth Circuit has recognized that "[i]ntent is an issue of fact which is to be inferred from all of the surrounding circumstances." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007), (citing *Kuswa & Assocs., Inc. v. Thibaut Constr. Co.,* 463 So. 2d 1264, 1266 (La.1985)). Consequently, when a contract is ambiguous, the trier of fact must resolve the factual issue of intent, and summary judgment is generally inappropriate. *Id.*; see also *Fertitta v. Regions Bank*, 2020-0300, p. 11 (La. App. 4th Cir. 12/9/20), 311 So. 3d 445, 453. Indeed, ". . . ambiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties." *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996).

## I. The 2014 Lease Governs the Parties' Contractual Rights and Obligations

The Court first addresses Mizkan's request for a declaration that "the Steens have no right to enforce surrender obligations with respect to the Leased Premises that are not expressly set forth in the 2014 Lease Agreement given the revocation of prior leases expressly contained in the 2014 Lease Agreement." [Doc. 14-1, p. 6].

Here, the parties agree that the 2014 Lease governs their rights and obligations concerning the Property. [Docs. 14, p. 1 and 20-1, p. 15]. Section 1(A) of the 2014 Lease expressly states "[t]he parties hereby revoke any and all prior leases, if any, affecting the Leased Premises." [Doc. 14-3, p. 1]. Thus, the parties expressly revoked prior leases affecting the Property when they entered into the 2014 Lease. Accordingly, the Court finds that the 2014 Lease controls the parties' contractual rights and obligations and that the revoked 1984 Lease is without effect and does not independently impose continuing contractual obligations. To the extent the Steens

seek to enforce obligations arising independently under the 1984 Lease, such relief is unavailable.

## II. Mizkan's Request Regarding the Definition of the Leased Premises

Mizkan next requests the Court to declare that "its surrender obligations under the 2014 Lease Agreement do not encompass property that is not part (sic) contemplated within the definition of 'Leased Premises . . . .'" [Doc. 14-1, p. 6].

After consideration, the Court finds that a separate declaration beyond the terms of the 2014 Lease Agreement is not warranted. Here, the parties dispute centers on how the surrender provisions of the 2014 Lease, specifically Section 13 and Section 14.1, should be interpreted and applied. The requested declaration would not resolve the parties' underlying disagreement over the condition in which the Property must be surrendered. Accordingly, Mizkan's Motion is denied to the extent it seeks further delineation from the Court on the definition of "Leased Premises."

## III. The Steens' Motion for Partial Summary Judgment

The Steens seek partial summary judgment declaring that "[u]nder Section 13 of the 2014 Lease Agreement, Mizkan America, Inc. is obligated to surrender the Leased Premises in substantially as good a condition as when received, i.e., suitable for use as sugar cane agricultural farmland . . . ." [Doc. 20, p. 1]. In support of their Motion, the Steens rely on the express language of Section 13, which provides that Mizkan must surrender the Property ". . . in substantially as good a condition as when received . . .," and identifies that condition as ". . . suitable for use as sugar cane agricultural farmland." [Doc. 20-1, p. 17]. The Steens maintain that this language

establishes an affirmative contractual obligation requiring Mizkan to restore the Property to a condition suitable for agricultural use.

Although Section 13 contains language supporting the Steens' interpretation, the Court cannot consider that provision in isolation. Louisiana Civil Code article 2050 requires the Court to consider each contractual provision in light of the other provisions so that each is given meaning consistent with the contract as a whole.

Section 14.1 of the 2014 Lease addresses Mizkan's ability to make alterations, additions, and improvements to the Property. [Doc. 14-3, p. 6]. And, importantly, it provides "[s]uch alterations, additions or improvements may remain with the Leased Premises at [Mizkan's] … sole discretion . . . ." Additionally, Section 14.1 provides Mizkan with the option, upon termination of the 2014 Lease and provided Mizkan is not in default, to remove alterations, additions and improvements, so long as Mizkan delivers the entire Property to the Lessors in good condition, reasonable wear and tear excepted, and repairs or payment for damages occasioned by said removal. [Doc. 14-3, p. 6].

The Court begins its analysis by examining the terms of the 2014 Lease to determine the parties' mutual intent. *See* La. Civ. Code art. 2045. When Section 13 and Section 14.1 are considered together, questions arise concerning the parties' intended surrender obligations. Section 13 identifies the condition in which the Property is to be surrendered as suitable for use as sugar cane agricultural farmland. Section 14.1, however, expressly permits Mizkan to leave alterations, additions, and improvements on the Property at its sole discretion.

These provisions address related subjects but do not clearly explain how the parties intended them to operate together upon the termination of the 2014 Lease. In particular, the Section 14.1 language permitting improvements to remain on the Property at Mizkan's sole discretion raises questions concerning the extent to which Mizkan's obligations under Section 13 requires restoration of the Property to its former agricultural condition. The Court cannot resolve this uncertainty by examining either provision independently. *See* La. Civ. Code art. 2050. Although the Steens rely on Section 13's reference to agricultural farmland, Mizkan's rights under Section 14.1 must also be given effect. The Court is unable, based solely on the language of the 2014 Lease, to determine the parties' common intent regarding the relationship between the provisions and the precise condition in which the Property must be surrendered.

The Court, in applying the relevant Louisiana Civil Code articles to the facts of this case, finds that the relevant provisions of the 2014 Lease are ambiguous concerning the extent of Mizkan's surrender and restoration obligations. This ambiguity is material because resolving it requires a determination of the parties' intent. As recognized in *Gerretts*, when a contract is ambiguous, Louisiana law permits consideration of evidence beyond the contract's four corners to determine the parties' intent. And the Fifth Circuit has explained that when a contract is ambiguous, the trier of fact must resolve the factual issue of intent, and summary judgment is improper. *Guidry,* 512 F.3d 177, 181 (5th Cir. 2007) (first citing *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996)

(“[A]mbiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties.”)); then citing *Invs. Syndicate of Am., Inc. v. City of Indian Rocks Beach*, 434 F.2d 871, 877–78 (5th Cir. 1970) (finding that dismissal on the pleadings was error when the contract at issue was ambiguous); and then citing *Gertler v. City of New Orleans*, 2003-2131 (La. App. 4th Cir. 9/1/04), 881 So. 2d 792, 796 (“If the language of [a contract] is ambiguous or susceptible to multiple interpretations, the intent of the parties must be determined and summary judgment is inappropriate.”)]; *accord Guillory v. Carrington Mortg. Servs., LLC*, No. CV 22-192, 2024 WL 1020555, at *11 (M.D. La. Mar. 8, 2024) (first citing *Guidry*, 512 F.3d at 181; and then citing *Liberty Mut. Ins. Co.*, 89 F.3d at 246).

The same reasoning applies here. The Court cannot determine as a matter of law either: (i) that the parties intended Section 13 to require restoration of the Property to a condition suitable for sugar cane agricultural farmland notwithstanding Mizkan’s rights under Section 14.1; or (ii) that the parties intended Section 14.1 to permit certain improvements to remain despite the clear language of Section 13.

All told, although Section 13 provides support for the Steens’ interpretation, the ambiguity created by reading Section 13 and Section 14.1 together precludes the Court from declaring, as a matter of law, that Mizkan is obligated to return the Property in a condition suitable for use as sugar cane agricultural farmland.

Accordingly, the Court finds that Mizkan is entitled to partial summary judgment to the limited extent that it finds that the parties’ contractual rights and

obligations are governed by the 2014 Lease and that the revoked 1984 Lease does not independently impose continuing contractual obligations. Mizkan is not, however, entitled to a declaration that would negate or materially diminish the express surrender obligation contained in Section 13.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc. 14] is GRANTED IN PART and DENIED IN PART; and Plaintiffs' MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc. 20] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 17th day of November 2026.

David C Joseph

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE